UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


| United States of America, | Case No. 3:89-cr-787-1 |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Ralph D. Warren, | |
| Defendant. | |

I.   INTRODUCTION AND BACKGROUND

Defendant Ralph D. Warren moves for early termination of his supervised release (Doc. 1624), pursuant to 18 U.S.C § 3583(e)(1). The government does not object to Mr. Warren's request.

Mr. Warren was convicted in 1991 of various serious drug charges involving conspiracy and distribution, as well as for possession of firearms as a convicted felon. On May 31, 1991, Mr. Warren received a life sentence without possibility of release for the commission of drug offenses within proximity of a school yard, and additional sentences of thirty years and ten years, all to be served concurrently. In addition to a court assessment of $750.00 which Mr. Warren has already paid, he was also sentenced to serve a period of sixteen years of supervised release, in the unlikely event that he would ever be released on his life sentence without possibility of release.

That unlikely event occurred after he served twenty-seven and one-half years of incarceration on his sentence, when Mr. Warren was granted relief by President Obama pursuant to Mr. Warren's request for clemency. As a result, Mr. Warren was ordered released from custody effective May 17, 2017. On February 8, 2017, Mr. Warren received an interim placement in a local

halfway house as a transition to release and supervision after his lengthy incarceration. His release from custody on May 17, 2017, began Mr. Warren's sixteen years of supervision.

## II.   STANDARD

My authority to grant early termination is governed by 18 U.S.C. § 3583(e), which provides discretion for me to terminate a term of supervised release and to discharge a defendant provided he has served at least one year of his supervised release, and such action is "warranted by the conduct of the defendant released and the interests of justice." *Id.*   In order to do so, I must deem it appropriate to do so after considering eight factors set forth in 18 U.S.C. § 3553(a). Although these are the same factors judges must consider in imposing sentence, as observed by Mr. Warren, I do not consider the general purpose of sentencing to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Finally, I need not conduct a hearing if, as here, the government does not object to the requested termination of supervision, and if the result is favorable to the person under supervision. Fed. R. Crim. P. 32.1(c)(1), (2)(B) & (C).

I note that while I had only been a member of the bar for three years at the time of Mr. Warren's conviction and sentencing, I have been able to get to know him over the past 18 months or so because he chose to participate in this Court's voluntary Re-Entry Program. The Program, which just celebrated its tenth anniversary, consists of a team of judges, probation officers, counsel for the government and federal defender, and other professionals. The goals of the program are for the team to provide encouragement, direction, correction when necessary, and assistance to medium to high risk offenders who have served the incarceration portion of their sentences, but are now entering a period of supervision.

The Re-Entry team meets monthly with participants to inquire about all aspects of their adjustment back into society, including discussion of their interpersonal relationships, employment,

counseling, treatment, and the choices they are making. All participants must complete a program of cognitive-based behavioral therapy to assist them in decision making, and participants are given goals each month for completion before the next month's session. Upon successful completion of 12 sessions, participants are deemed to have successfully completed the Re-Entry Program. Mr. Warren is a successful graduate of the program.

## III. DISCUSSION

While the statute is clear concerning what factors should be applied from general sentencing considerations, Mr. Warren suggests that the more pragmatic and pertinent approach is for me to review the criteria promulgated by a committee chaired by Chief Circuit Judge William Wilkens from the Fourth Circuit, whose committee reviewed the § 3553(a) factors in the specific context of early termination of supervision.

Because I find these suggested criteria comport appropriately and more specifically to a court's review of a request for early termination of supervised release and are consistent with § 3553(a) factors, I will analyze Mr. Warren's request within the framework of those factors.

### A. Stable community reintegration (e.g. residence, family, employment)

Mr. Warren has made a quick and successful reintegration to our community. He has a stable and important job in assisting those in the community who are struggling and may have been in trouble, and has re-established personal contact with his family throughout the generations. His residence is stable and there is every reason to believe it will remain stable. In fact, overall his community reintegration is very stable, and his future is promising in all the ways a court and community would hope.

### B. Progressive strides toward supervision objectives and compliance with all conditions of supervision

I know of no reported or suspected violations of the terms and conditions of supervision. Mr. Warren has been fully compliant with conditions imposed, and with the goals set for him by his

supervising probation officer and by the Re-Entry team. He has often exceeded expectations in the progress he has made in reintegrating into our community.

### C. No aggravated role in the offense of conviction, particularly large drug or fraud offenses

This factor cuts against my granting Mr. Warren early termination of his supervision. He clearly had a major role – if not *the* major role – in his offense of conviction. The evidence presented at trial and his subsequent sentence all support the major role he played in the development and execution of a major drug conspiracy involving substantial quantities of illicit substances. But he is now 61 years of age, and has served nearly 30 years in federal prison for his crimes, which somewhat tempers the weight of this factor.

### D. No history of violence (e.g. sexually assaultive, predatory behavior or domestic violence)

I am aware of no history of violence, in his offenses of conviction, or otherwise. Therefore, this factor poses no concerns in favorably considering his early termination.

### E. No recent arrests or convictions (including unresolved pending charges) or ongoing uninterrupted patterns of criminal conduct

As I observed in discussing Mr. Warren's successful reintegration into our community, he has been fully compliant with the court's rules concerning his supervision. There are no pending charges against him or even the suggestion or suspicion of any criminal conduct.

### F. No recent evidence of alcohol or drug abuse

Again, as discussed above, Mr. Warren has been compliant with all terms and conditions of his supervision, including negative results from random drug testing. Nothing about his appearance, demeanor, or conduct suggests to me in any way that substance abuse is or may be a problem.

### G. No recent psychiatric episodes

In addition to his compliance with all court rules and terms of his supervision, Mr. Warren has shown appropriate conduct, self-reflection, and the setting and execution of worthwhile

personal goals. There is no evidence or suggestion of any psychiatric episodes or the need to be concerned about his ongoing mental health.

**H. No identifiable risk to the safety of any individual victim**

Given the nature of his conviction, there are no "identifiable victim[s]" in his case. Despite the legal distinction, I note that not only does Mr. Warren pose no risk to drug addicts or those at risk of addiction, he is actually being proactive in assisting those suffering from addiction. His current work, since August of 2017, at the Lima Urban Minority Alcoholism and Drug Outreach Program as a Case Manager and Reentry Coordinator, demonstrates his real commitment to assisting those in recovery from substance abuse.

**I. No identifiable risk to public safety based on the Risk Prediction Index**

While I am not aware of Mr. Warren has been scored on the Risk Prediction Index, this much remains true: his offense of conviction, about 30 years ago, did not include acts of violence, and his conduct in full compliance with the terms of his supervision and his work in helping those in our community who are struggling with substance abuse, lead me to conclude there is no identifiable risk to public safety. In fact, quite the opposite.

Since his release from federal custody, Mr. Warren has conducted himself in a way that has met or exceed this Court's hopes for successful reintegration into and contribution to our community. Whether attaining his current job position, earning Dean's List honors at the University of Toledo for his recent class work and advancing into his senior year towards his desired degree, or sharing his experiences and insights with his fellow Re-Entry Court participants, he has been an inspiration to all.

It would seem President Obama's choice to grant Mr. Warren relief from his mandatory life sentence was a prescient one. In reviewing Mr. Warren's past and his performance while on supervision, and having analyzed all of the factors required by law, I am quite comfortable in

5

concluding that termination from supervision is warranted by Mr. Warren's conduct and is in the interests of justice.

## IV. CONCLUSION

For the reasons stated above, Mr. Warren's request for early termination of his supervised release, pursuant to 18 U.S.C. § 3583(e)(1), is granted. Mr. Warren shall be terminated, successfully, from his supervision and discharged from that supervision, forthwith.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
